**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 14, 2009
Decided October 28, 2009

**Before**

JOHN L. COFFEY, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

Nos. 08-3155 & 08-3176

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeals from the United States District Court for the Northern District of Illinois, Western Division. |
| *v.* | No. 3:06-cr-50074-2, 3 |
| DEMARLON J. LEWIS and JAMES T. KING, *Defendants-Appellants.* | Philip G. Reinhard, *Judge*. |

### O R D E R

James King, Demarlon Lewis, and Joaquin Tankey were charged with plotting to rob a cocaine stash house which, they would later find out, did not exist. Tankey pleaded guilty, but King and Lewis were convicted after a jury trial of conspiracy and attempted possession of cocaine with intent to distribute. *See* 21 U.S.C. §§ 846, 841(a)(1). King also was convicted on related gun charges. He and Lewis challenge their sentences on the drug counts because, they contend, the evidence of drug quantity is too thin to sustain the prison terms they received.

The government essentially proved its case through undercover agent David Gomez, who secretly recorded a series of conversations with Tankey, King, and Lewis. Gomez was

the government's principal witness and sponsored the introduction of the recorded conversations.  Neither King nor Lewis testified at trial.

The story told by Agent Gomez is that an informant pitched Tankey a plan to rob a cocaine stash house, then brokered a meeting with Gomez in his undercover capacity. Gomez told Tankey that he was a disgruntled courier for Mexican drug traffickers, who typically withheld the location of the stash houses until shortly before the time designated for picking up cocaine for delivery.  The stash houses, Gomez explained to Tankey, usually held about 20 kilograms of cocaine.  According to Gomez, Tankey agreed to assemble a "crew" to rob a stash house.

Agent Gomez told the jury that after Tankey recruited King he warned the two would-be robbers that the drug dealers at the stash houses were often heavily armed.  Once again, he mentioned the 20-kilogram amount.  Gomez offered the two men a chance to walk away, but Tankey replied that they were ready to "get down," and King said he was "with it."  During this recorded conversation, King speculated that they would force their quarry to the ground and maybe play the "murder game" because the plan was "all or nothing."

On the day of the planned robbery, Lewis introduced himself to Gomez, and when the agent asked if he was "cool with all this," Lewis said he was.  Gomez reiterated that 20 kilograms of cocaine were at stake, and Lewis replied, "Right."  When Gomez asked about the crew's firepower, King answered that they were carrying "big shit and little shit." Tankey, King, and Lewis then decided to wait and watch Gomez enter and leave the stash house to guarantee that they hit the right one.  Gomez asked if they were ready, and they said yes.

Gomez took the three men to a storage locker where they were to drop off his share of the stolen cocaine.  When they arrived, all three were arrested.  Officers found a loaded pistol on Tankey and another gun in the men's car.

Tankey, King, and Lewis were indicted together.  Before trial, King and Lewis moved for a bill of particulars specifying whether prosecutors were accusing them of plotting to rob the stash house or just Agent Gomez.  Unless the government was forced to produce a bill of particulars, the defendants asserted, prosecutors could argue about both targets in the alternative and thus confuse the jury about the relevant drug quantity.  The district court decided that the indictment was sufficiently informative and denied the motion.

At trial the lawyers for King and Lewis told the jurors during opening statements that the government's evidence would show only that the two defendants were acting

tough and trying to get details about a crazy scheme, not that they had entered into an agreement to rob the stash house.  During closing arguments, however, counsel suggested that, even if King and Lewis weren't innocent, they most likely intended to steal whatever cocaine Agent Gomez picked up at a stash house and not the entire 20 kilograms inside that particular house.  But King and Lewis never testified, and they never introduced any evidence suggesting that their intended target was something—or someone—other than a stash house stocked with 20 kilograms of cocaine.  Neither did the defendants object to any instruction included in the district court's charge to the jury.  Nor did they propose any instruction or special verdict to clarify the intended target of the robbery.  They did, however, move for a judgment of acquittal, and the district court denied that motion.

In returning verdicts of guilty on the drug counts, the jury also found that the drug crimes involved 5 or more kilograms of cocaine.  That determination increased the statutory maximum term of imprisonment from 20 years to life.  *See* 21 U.S.C. § 841(b)(1)(A), (b)(1)(C).  King was sentenced to a total of 360 months' imprisonment on the drug charges (plus a 60-month consecutive term for one of the gun violations).  Lewis was sentenced to a total of 300 months.

At first blush it might seem that King and Lewis are challenging the sufficiency of the evidence underlying their drug convictions, but they are not.  Instead they simply contend that the jury's finding that their crimes involved at least 5 kilograms of cocaine is not supported by sufficient evidence.  This is so, according to King and Lewis, because their plan all along was to rob Agent Gomez of whatever smaller amount of cocaine he picked up at the stash house, not to steal 20 kilograms from inside the stash house.  Drug quantity is not an element of the charged crimes, so this question has no impact on the convictions.  *See United States v. Kelly*, 519 F.3d 355, 362-63 (7th Cir. 2008); *United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002).  But because the amount of cocaine did affect the statutory maximum penalties for both defendants, the government was required to prove the quantity to the jury beyond a reasonable doubt.  *See Kelly*, 519 F.3d at 363.

The uncontroverted evidence revealed repeated conversations about robbing a stash house containing 20 kilograms or more of cocaine.  King and Lewis's argument has no evidentiary support; essentially, they contend that any rational juror was compelled to infer, on the basis of nothing more than counsel's speculation, that a secret, "real" agreement necessarily lay behind the facade of the evidence the jurors actually heard.  That contention is meritless—the proof that at least 5 kilograms was the target is overwhelming.

As for the bill of particulars, the district court properly exercised its discretion in denying their motion.  We review the district court's denial only for an abuse of discretion, *see United States v. Hernandez*, 330 F.3d 964, 975 (7th Cir. 2003), so King and Lewis must

show that no reasonable court could have denied their request.  The test is whether the indictment, together with any discovery, sufficiently informs defendants of the charges and enables them to prepare for trial.  *See United States v. Fassnacht*, 332 F.3d 440, 446 (7th cir. 2003).  King and Lewis's motion actually outlines all the possible theories of the case, so they cannot claim to have been surprised with unforeseen possibilities.  And although they complain that their preparation of a defense was impaired, the two defendants do not tell us what they might have done differently.  They insinuate that the jury might have somehow weighed the evidence differently if a bill of particulars had been granted, but this contention does not go to the *preparation* of a defense.

Accordingly, in each appeal the judgment is AFFIRMED.